UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-81198-CIV-SMITH/MATTHEWMAN

RICHARD T. STROTHER,

      Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security
Administration,

      Defendant.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTIONS**
**FOR SUMMARY JUDGMENT [DEs 23, 28]**

THIS CAUSE is before the Court upon *pro se* Plaintiff, Richard T. Strother's ("Plaintiff") Motion for Summary Judgment [DE 23] and Defendant, Andrew Saul, Commissioner of Social Security Administration's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment [DEs 28, 29]. Defendant has also filed a Statement of Material Facts and Response to Plaintiff's "Statement of Undisputed Facts" [DE 30]. Plaintiff has filed a Reply [DE 31]. This matter was referred to the undersigned by United States District Judge Rodney Smith. [DE 2]. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff and whether the correct legal standards have been applied. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

**I. FACTS**

On October 8, 2015, Plaintiff filed a Title II application for a period of disability and

1

disability insurance benefits, alleging disability beginning on December 1, 2014. [R. 11].[1] The claim was denied initially on March 9, 2016, and upon reconsideration on May 19, 2016. *Id.* Following a hearing on August 27, 2018, the Administrative Law Judge ("ALJ"), Laura Bernasconi, issued a decision on September 25, 2018, denying Plaintiff's request for benefits. [R. 11-17]. A request for review was filed with the Appeals Council and denied on June 26, 2019. [R. 1-7]. The Appeals Council noted that, although Plaintiff had filed two additional pieces of evidence—imaging records dated December 4, 2018 to December 6, 2018, and a transaction report re: chiropractic treatment from February 28, 2018 to April 30, 2018—the additional evidence did not relate to the time period at issue. [R. 2].

## A. <u>Hearing Testimony</u>

At the time of the August 27, 2018 hearing, Plaintiff was 66 years old. [R. 40]. The ALJ had a vocational expert—Ms. Kiddery—attend the hearing by phone. [R. 31]. Plaintiff opted to proceed with the hearing without representation. [R. 33]. The ALJ explained to Plaintiff that his date last insured was September 30, 2015. [R. 39-40]. Plaintiff testified as follows.

At his date last insured, Plaintiff was 63 years old. [R. 41]. His highest level of education was graduate school. *Id.* He previously worked in the consulting field, helping small companies that were trying to access the capital markets. *Id.* In 2009, he consulted with a company in Hollywood, California, that produced work out videos with Kim Kardashian. [R. 42]. From 2010 through 2014, he consulted with a company called Credit Smart Pro. *Id.* He was not paid a salary while working in consulting, but he relied on being given shares of companies and royalties, all of

---

[1] All references are to the record of the administrative proceeding filed by the Commissioner in Docket Entry 19.

which dried up in 2014. *Id.*

The consulting job was a sit-down type of job, but it required travel. [R. 43]. Plaintiff did not supervise anyone. *Id.* He sometimes had to carry boxes of documents that weighed 25-30 pounds. *Id.* Plaintiff stopped working in 2014 both because his business stopped being profitable, because he was forced to declare bankruptcy, and because he contracted "toxic mold poisoning." [R. 44].

Plaintiff believes he contracted toxic mold poisoning when he moved on September 15, 2014. [R. 44]. The toxic mold poisoning caused the following symptoms: chronic fatigue, dizziness, feeling like he was going to die every day, the inability to walk without falling and hurting himself, shaking hands, palpitations, buzzing in his ears, and a weakened immune system. [R. 44-45]. Plaintiff's symptoms were intense for only about nine months, but he still has recurrences. [R. 45]. According to Plaintiff, "[i]t's getting better," and his blood tests results have gotten increasingly better. [R. 45]. He only needs to take "leeching agents" for approximately two more years. [R. 45-46].

Plaintiff also suffers from spinal issues. [R. 46]. His L5 was ruptured "a while ago," his L4 ruptured in 2009, and his L3 is bulging and may have even ruptured. *Id.* Plaintiff's leg collapses at certain times, and his muscle is "losing its nerve." *Id.* C2 may also be at issue, and Plaintiff has four degenerative discs in the cervical area—C2 through C6. *Id.* Because of these degenerative discs, Plaintiff cannot sit or stand for long or travel. *Id.* Plaintiff's doctor tried to decompress his back, but that procedure only helped so much. *Id.* Plaintiff wants to obtain stem cell treatment and is on the waiting list for a clinical trial. [R. 46-47]. Plaintiff has continuing degeneration and spinal stenosis. [R. 47]. He has a lot of pain and tries to limit the use of painkillers. *Id.* He does aquatic

3

exercises to try to keep the degeneration at bay and to try to keep his muscles from atrophying. [R. 48]. Plaintiff also wears a back brace. *Id.*

Plaintiff had an MRI in 2010 and has a letter from his doctor from 2012 stating that he should not travel. [R. 48]. He has weak abdominal muscles because he had peritonitis in January 2012 and had to have a surgery where they cut his stomach muscles. [R. 48-49]. Plaintiff's doctor recommended surgical intervention for his back; however, Plaintiff cannot afford to have six discs operated on, and he would also be bed-ridden for three months. [R. 49].

When questioned by the ALJ about when he was diagnosed with anxiety, Plaintiff agreed that the diagnosis was made on June 21, 2016. [R. 52]. Plaintiff also emphasized that he suffers from neural root suppression, disassociation, dizziness, scoliosis, a hip and right knee problem, disorders of the spine, spinal stenosis, degenerative disc disease, spondylosis, skin disorders from the mold exposure, neurological impairments including difficulty balancing and shaking hands, and an anxiety disorder. [R. 52-53]. Finally, he argued that what he suffers from is comparable to Gulf War Syndrome. [R. 54].

The vocational expert was not asked to testify at the hearing by the ALJ.

### B. Medical Record Evidence

In Plaintiff's Title II application for a period of disability and disability insurance benefits, he alleged disability beginning on December 1, 2014. [R. 11]. According to the ALJ's decision, Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2015. [R. 13]. At the hearing before the ALJ, it was also clearly established without any objection that the time period at issue for determining whether Plaintiff was under a disability ended on September 30, 2015. [R. 39-40]. Therefore, there are records which pre-date and post-date the

4

undisputed relevant period of December 1, 2014, to September 30, 2015. While the Court has carefully reviewed the entire record in this case, certain of the medical records appear to be immaterial to the issue of whether Plaintiff suffered from a disability pursuant to the Social Security Act during the relevant time period---from December 1, 2014, through September 30, 2015.[2]

In reaching her decision to deny Plaintiff's benefits, the ALJ reviewed the medical evidence of record. Only the medical evidence of record which is relevant to the issues on appeal is summarized chronologically below.

On June 13, 2010, Plaintiff had MRIs of the lumbar and cervical spine completed. [R. 273-77]. With regard to Plaintiff's lumbar spine, it was determined that he had left convexity of the lumbar curvature; anterior disc extension at L2/3; diffuse posterior bulging at L3/4 impressing the thecal sac and having peripheral components encroaching into the foramen; disc hydration loss and disc narrowing with anterior disc extension, spur formation, hypertrophy of the facets, and grade 1 spondylolisthesis at the L4/5 level; diffuse posterior bulging at L4/5 impressing the thecal sac and having peripheral components encroaching into the foramen; superimposed left lateral disc herniation impressing on the L4 nerve root; stenosis of the central canal, and lateral recesses with thecal sac compression and bilateral L5 nerve root impressions; disc hydration loss, disc space narrowing with anterior disc extension, spur formation, reactive endplate changes and retrolisthesis at the L5/S1 level; superimposed left paramedian disc herniation causing impression and posterior displacement on the exiting left S1 nerve root; abutting of the thecal sac and impression on the

---

[2] Plaintiff submitted evidence to the Appeals Council from after 2015. [R. 22-28]. The Appeals Council properly disregarded this evidence.

existing right S1 nerve root; peripheral components of disc bulging abutting the left L5 nerve root in the left foramen and impressing on the right L5 nerve root in the right neural foramen; and an approximately 1 cm bright structure of the central left kidney which could be a parapelvic cyst. [R. 275-76].

With regard to Plaintiff's cervical spine, it was determined that he had C2/3 disc hydration loss and posterior disc bulge impressing on the thecal sac; C3/4 disc hydration loss and broad disc herniation, with a central and left-sided component, causing impression upon the ventral and left ventral cord, with extension of the disc herniation posterolaterally into the left anterior recess, and extension laterally into the left neural foramen; C4/5 disc hydration loss, anterior disc extension, spur formation, and a subligamentous disc herniation, impressing on the cord in the midline, and encroaching to some degree into the left neural foramen; C5/6 disc space narrowing, disc hydration loss, anterior extension, spur formation, retrolisthesis, and a superimposed subligamentous disc herniation, with surrounding spur formation, productive uncovertebral joint changes, impression on the cord, central stenosis, and bilateral neural foraminal narrowing, slightly more on the left than right; and C6/7 subligamentous disc herniation, impressing on the thecal sac. [R. 276-77].

On September 12, 2012, Robert L. Cucin, M.D., wrote correspondence on Plaintiff's behalf. [R. 278]. Dr. Cucin stated in the letter that Plaintiff had numerous herniated discs in his cervical and lumbar spine from prior injuries and degeneration, as well as symptoms of radicular pain into both of his upper extremities. *Id.* Dr. Cucin explained that airline trips had exacerbated Plaintiff's symptoms and have required several different treatments, including medications, the wearing of a soft cervical collar and rigid lumbar brace, and decompressive therapy. *Id.* Dr. Cucin pointed out that Plaintiff's condition is complicated by his weakened abdominal muscles resulting

from surgical treatment of an abscess from a ruptured appendix. *Id.* He opined that Plaintiff has exceeded the limit of repeated spinous distraction and that "another period of symptom exacerbation is highly likely to necessitate interventional surgery on multiple spinous levels." *Id.* The doctor strongly recommended against Plaintiff traveling. *Id.*

On November 6, 2014, Daniel N. Tucker, M.D., sent Plaintiff correspondence. [R. 280-282]. He noted that Plaintiff's blood test results were generally within the normal range, except he needed to take more vitamin D-3 and was at an increased risk for diabetes. [R. 280]. Dr. Tucker did find, however, that Plaintiff's Immunoglobulin-E was strikingly elevated at 1,072. [R. 281]. He explained that the most likely explanation was Plaintiff's exposure to black mold. *Id.* Dr. Tucker stated that Plaintiff had been sick previously but felt much better. *Id.* He noted that, on the whole, Plaintiff seemed to be doing well and appeared to be significantly younger than his chronological age. [R. 282]. Plaintiff also saw Dr. Tucker on September 18, 2014, and July 23, 2015. [R. 283-85]. However, the doctor's notes are illegible.

On July 17, 2015, the office manager of Siegal Chiropractic Clinics drafted correspondence stating that Plaintiff became an established chiropractic patient under the care of Dr. Siegal on March 11, 2009. [R. 300]. The correspondence contains no additional information.

On June 21, 2016, Plaintiff presented to Dr. Serge J. Thys for the first time. [R. 287]. Dr. Thys diagnosed Plaintiff with an unspecified anxiety disorder. *Id.* There are no accompanying documents to the single sheet stating Plaintiff's diagnosis.

On August 16, 2016, Plaintiff saw Dr. Jonathan A. Albert for an annual exam. [R. 292]. Dr. Albert noted that Plaintiff had a past medical history of an anxiety disorder, insomnia, hypogodanism, and skin cancer. *Id.* Dr. Albert prescribed Alprazolam and Ambien. *Id.*

On September 26, 2016, Plaintiff's Immunoglobulin E was still elevated. [R. 289].

On May 7, 2018, Dr. Tucker drafted correspondence to Plaintiff which stated that all four of the major mycotoxins were either present or equivocal in Plaintiff's blood. [R. 305]. Dr. Tucker noted that Plaintiff had reported that he had been exposed to a great deal of mold, and probably mycotoxins, up to September 2014 when he moved. *Id.*

The medical record also includes research performed by Plaintiff regarding his various ailments, R. 307-311, 318-330, as well as a Social Security Decision regarding a different claimant that Plaintiff has identified as relevant [R. 332].

In the Disability Determination Explanations at the Initial Level dated March 9, 2016, it was noted that Plaintiff's alleged onset date was December 1, 2014, and his date last insured was September 30, 2015. [R. 62]. It was determined that there was insufficient evidence in the file to make a fully informed decision at DLI, so the claim should be denied. [R. 62-63]. The State disability adjudicator/examiner, Cadron Banks, determined that Plaintiff is not disabled. [R. 64-65].

In the Disability Determination Explanation at the Reconsideration Level dated May 18, 2016, it was determined that, while Plaintiff had a medical determinable impairment of spine disorders, the evidence at the reconsideration level was also insufficient. [R. 70-71]. State disability adjudicator/examiner, Alfred Grasso, determined that Plaintiff is not disabled. [R. 72-73].

Plaintiff has filled out Supplemental Pain Questionnaires and has attached additional information and research to them. [R. 199-232]. He has also completed a Function Report. [R. 233-240], Recent Medical Treatment Report [R. 266, 270], Recent Medical Treatment Report [R.

267], and Medications Report [R. 268-269].

## C.  ALJ's Decision

The ALJ issued her decision on Plaintiff's claim for benefits on September 25, 2018. [R. 11-17]. The ALJ first explained the five-step sequential evaluation process for determining whether an individual is disabled. [R. 12-13]. She found that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2015, and that he did not engage in substantial gainful activity during the period from his alleged onset date of December 1, 2014, through his date last insured of September 30, 2015. [R. 13]. The ALJ then found that Plaintiff suffers from the following medically determinable impairments: degenerative disc disease and toxic mold exposure. *Id.* The ALJ explicitly found that Plaintiff's anxiety disorder is a non-medically determinable impairment prior to the date of last insured. [R. 13-14].

The ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months, so he did not have a severe impairment or combination of impairments pursuant to 20 CRF 404.1525, *et seq.* [R. 14]. The ALJ explained that she had considered all of Plaintiff's symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id.*

The ALJ explicitly considered Plaintiff's medical records, written statements, and testimony, and found that Plaintiff's "medically determinable impairments could have been reasonably expected to produce the alleged symptom; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [R. 15]. The ALJ found

that there was "generally a lack of objective evidence in the record to establish that claimant's impairments lasted or were expected to last for a period of 12 months at a level that significantly limited his ability to do basic work activities during the relevant period." *Id.*

The ALJ specifically discussed the record evidence regarding Plaintiff's toxic black mold exposure and found that the "record does not contain objective evidence regarding these recurrences during the relevant period, other than the reference to congestion in July 2015." [R. 15-16]. The ALJ considered the record evidence regarding Plaintiff's spinal impairments and noted that the only objective evidence was from 2010 and 2012, prior to the alleged onset date of December 10, 2014. [R. 16]. The ALJ further pointed out that there is no objective evidence showing that Plaintiff "sought or received further treatment for those conditions since 2012," and there is no objective evidence showing that Plaintiff's condition has worsened since 2014, when he last worked. *Id.*

The ALJ gave Robert Cucin, M.D.'s opinion little weight as it "is speculative in nature and remote to the relevant period." [R. 16]. The ALJ also noted that the various information and articles submitted by Plaintiff are not necessarily applicable to Plaintiff and are not binding on his claim. *Id.*

The ALJ ultimately concluded that Plaintiff was "not under a disability, as defined in the Social Security Act, at any time from December 1, 2014, the alleged onset date, through September 30, 2015, the date last insured." [R. 17]. The ALJ found that "[b]ased on the application for a period of disability and disability insurance benefits protectively filed on October 8, 2015, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act though September 30, 2015, the last date insured." *Id.*

## II. <u>MOTIONS FOR SUMMARY JUDGMENT</u>

In his Motion for Summary Judgment, Plaintiff asserts that the ALJ "was clearly mistaken about [ ] her statement regarding the lack of on-going treatment of claimant's spinal degenerative impairments since 2012, though the record clearly shows treatment from Plaintiff's Florida Chiropractor from 2009-2015 DOC 300 and through 2018. DOC 58-59[.]" [DE 23, p. 12]. He further asserts that the ALJ "ignored medical vocational tables, or evidence of functionality concerning a person age of 67 and did not assess the measure of 'pain.'" *Id.* It seems that Plaintiff's primary argument is that the ALJ improperly found that his impairments were not severe enough. *Id.* at pp. 12-13. According to Plaintiff, the ALJ made certain "subjective arbitrary and capricious judgments," rather than relying on the substantial evidence. *Id.* at 15-18. Plaintiff also contends that the Appeals Council "mistakenly excluded evidence of additional severe exertional and non exertional limitations that were later submitted after the ALJ hearing and ignored." *Id.* at p. 12.

In Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment, Defendant asserts that substantial evidence supports the ALJ's finding that Plaintiff did not establish the presence of a severe impairment on or before September 30, 2015, the date his insured status expired. [DE 28, pp. 4-8]. Defendant argues that "[t]he record demonstrates that Plaintiff had been diagnosed with various conditions both before and after his alleged onset of disability on December 1, 2014; however, diagnoses do not establish work-related limitations." *Id.* at p. 5. Defendant also maintains that "[a]n impairment that arose or became disabling after a claimant's DLI cannot be the basis for a finding of disability." *Id.* at p. 7.

11

In reply, Plaintiff argues that Defendant has mischaracterized the issue at hand. [DE 41, pp. 3-4]. He argues that the ALJ made several mistakes of fact and law, ignored the standard set forth in *Brady v. Heckler*, 724 F. 2d 914 (11th Cir. 1984) (per curiam), ignored the exact onset date of Plaintiff's anxiety, erred in assessing his functionality, failed to assess Plaintiff's pain, and made subjective, arbitrary, and capricious judgments. *Id.* at pp. 4-12.

### III. <u>RELEVANT LAW</u>

Judicial review of the factual findings in disability cases is limited to determining whether the Commissioner's decision is "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997)). Courts may not "decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F. 3d 1232, 1240, n. 8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F. 3d 1253, 1260 (11th Cir. 2007) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920 (a)-(f). The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry concludes. 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If the ALJ finds that claimant does not suffer from a severe impairment or combination of impairments, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. § 404.1520(c).

Step three requires the ALJ to compare the claimant's severe impairment(s) to those in the listing of impairments. 20 C.F.R. § 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that, if they are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518, n. 1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the claimant's impairments prevent him or her from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a *prima facie* case of disability is established. 20 C.F.R. § 404.1520(e). The burden then shifts to the ALJ to show at step five that, despite the claimant's impairments, he or she is able to perform work in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(f); *Phillips*, 357 F. 3d at 1239. In order to determine whether the claimant has the ability to adjust to other work in the national economy, the ALJ may either apply the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app.2, or utilize the

13

assistance of a vocational expert. *See Phillips*, 357 F. 3d at 1239-40.

## IV. <u>ANALYSIS</u>

In his Motion for Summary Judgment, Plaintiff argues that the ALJ improperly determined that his impairments were not severe enough to meet or medically equal the criteria of an impairment listed in the Social Security Code. [DE 23, p. 12-13]. According to Plaintiff, the ALJ made certain "subjective arbitrary and capricious judgments," rather than relying on the substantial evidence. *Id.* at 15-18. Plaintiff also contends that the ALJ "ignored medical vocational tables, or evidence of functionality concerning a person age of 67 and did not assess the measure of 'pain.'" [DE 23, p. 12]. In response, Defendant contends that Plaintiff failed to meet his burden of proving that he has a severe impairment or combination of impairments that lasted 12 consecutive months during the relevant time period—on or before his date last insured. [DE 28, pp. 4-8]. In reply, Plaintiff argues that the ALJ made several mistakes of fact and law, ignored the standard set forth in *Brady*, 724 F. 2d 914, ignored the exact onset date of Plaintiff's anxiety, erred in assessing his functionality, failed to assess Plaintiff's pain, and made subjective, arbitrary, and capricious judgments. [DE 41 at pp. 4-12].

Pursuant to 20 C.F.R. § 404.1520(a)(4)(ii), "[a]t the second step, [ALJs] consider the medical severity of [claimants'] impairment(s). If [claimants] do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, [ALJs] will find that [claimants] are not disabled." 20 C.F.R § 404.1520(a)(4)(ii). The relevant case law also states that, "[a]t step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The

claimant's threshold burden of proof is as follows: "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 920 (11th Cir.1984) (per curiam). "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work." *Doughty*, 245 F.3d at 1278. "[P]roof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work." *Hutchinson v. Astrue*, 408 F. App'x 324, 326 (11th Cir. 2011) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986)).

In the ALJ's decision, she found that the only medically determinable impairments that Plaintiff suffered from during the relevant period of time were degenerative disc disease and toxic mold exposure and that Plaintiff's alleged anxiety disorder was not medically determinable. [R. 13-14]. The ALJ later found that "[t]he conclusion that the claimant does not have an impairment or combination of impairments that significantly limits his [ ] ability to perform basic work activities is consistent with the objective medical evidence and other evidence. Additionally, the record does not establish the claimant's impairments meet the durational requirement of a severe impairment during the relevant period." [R. 17].

This Court, upon careful review, finds that the substantial record evidence supports the ALJ's finding. The only arguably relevant, objective evidence in this case consists of Plaintiff's June 13, 2010 MRIs of the lumbar and cervical spine [R. 273-77]; rather conclusory correspondence dated September 12, 2012, by Robert L. Cucin, M.D., that recommends against Plaintiff traveling [R. 278]; correspondence dated November 6, 2014, from Daniel N. Tucker,

M.D., that notes Plaintiff's elevated Immunoglobin-E level, briefly discusses Plaintiff's self-reported black mold exposure, and notes Plaintiff's improvement regarding his symptoms from the black mold exposure [R. 280-282]; other illegible notes from Dr. Tucker [R. 283-85]; correspondence dated July 17, 2015, from the office manager of Siegal Chiropractic Clinics stating that Plaintiff became an established chiropractic patient under the care of Dr. Siegal on March 11, 2009, but without any accompanying notes or detailed information [R. 300]; a June 21, 2016, diagnosis that Plaintiff has an unspecified anxiety disorder by Dr. Serge J. Thys, but without any accompanying notes or detailed information [R. 287]; and documentations showing that Plaintiff still had elevated Immunoglobin E and mycotoxin levels on September 26, 2016, and May 7, 2018. [R. 289, 305].

The Court has rarely seen so little relevant medical evidence in a social security case. There is a paucity of relevant medical evidence to support Plaintiff's claimed impairments. Furthermore, a great deal of the evidence is from before or after the period of December 1, 2014, to September 30, 2015, which makes it less relevant. *Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 944 (11th Cir. 2017) ("Evidence of deterioration of a previously considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether the claimant was disabled during the relevant time period under review.) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999)). Additionally, the majority of the evidence is conclusory and simply asserts an opinion or diagnosis without any underlying facts or details, so such evidence can be discounted. *Parker v. Berryhill*, No. 18-14349-CIV, 2019 WL 3097511, at *9 (S.D. Fla. July 15, 2019) ("[a] treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'") (quoting *Crawford v. Commissioner*

16

*of Social Security*, 363 F.3d 1155, 1159-60 (11th Cir. 2004)).

Plaintiff simply did not meet his burden of proving that he is suffering from a severe impairment or combination of impairments. Nor did Plaintiff meet his burden of proving that his impairment or impairments prevent him from performing his past relevant work.

Additionally, the Court rejects each of Plaintiff's sub-arguments and finds that the ALJ did not make any arbitrary and capricious findings and that all of the ALJ's factual findings are supported by substantial evidence. The Court further finds that the ALJ made her decision based on proper legal standards. Finally, the Court explicitly finds that a) the ALJ did not ignore the standard set forth in *Brady*, 724 F. 2d 914; b) the ALJ properly found the correct onset date of Plaintiff's anxiety in light of the record evidence before the ALJ; c) the ALJ did not err in assessing Plaintiff's functionality; and d) the ALJ did not fail to assess Plaintiff's pain. In sum, there is no merit to Plaintiff's arguments.

## V. <u>CONCLUSION AND RECOMMENDATION</u>

In light of the foregoing, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED**. It is also recommended that Plaintiff's Motion for Summary Judgment [DE 23] be **DENIED**, and Defendant's Motion for Summary Judgment [DE 28] be **GRANTED**.

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall file written objections, if any, to this Report and Recommendation with United States District Judge Rodney Smith within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C). Failure to object to this Report and Recommendation within that time period waives the right to challenge on appeal the District

Court's order based on unobjected-to factual and legal conclusions. 11th Cir.R. 3-1.

      **RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Palm Beach

County, Florida, this 14th day of September, 2020.

WILLIAM MATTHEWMAN
United States Magistrate Judge